Your Honor, the first case on the docket this morning is 2-22-0158. This is the people of the State of Illinois plaintiff Appolini v. Kevin M. Cooper, defendant of this case. I'm calling on behalf of the Attellant, Mr. Andrew T. Moore. I'm calling on behalf of the Appolini, Mr. John G. Barrett. Good morning, counsel. We will proceed when you are ready. Mr. Moore. Good morning, Your Honors, and may it please the Court. My name is Andrew Moore, and I represent Kevin Cooper in this appeal. Kevin Cooper was convicted of aggravated battery based on the actual knowledge that the victim, Robert Manella, was over 60 at the time of the incident. There were three issues raised in this appeal, and I will begin by discussing how the State failed to prove that my client knew, not should have known, that Manella was over 60 at the time of the incident. Next, I'll address the improper identification procedures that led to the inadmissible, unreliable testimony that was used by the State to mitigate perhaps its biggest problem in this case. And finally, I will discuss how the circuit court violated Mr. Cooper's due process rights and invaded the province of the jury by not allowing him to show his face to the jury. That said, the State has failed to prove beyond a reasonable doubt that Cooper knew Manella was a perfect stranger, was over 60 years old. Could this element of over 60 years old be proven by circumstantial evidence? Yeah. It almost always is proven by circumstantial evidence, but the inferences from that evidence have to lead directly to the actual knowledge of age, rather than another inference and another inference and so on and so forth. But what did Mr. Manella look like? He looked like a person roughly around that age. But does looking at somebody roughly around the age of 60 give you the actual knowledge that he's over 60? Well, you also had the nursing home signs, the fact that he was wearing slippers without socks on, saying, I'm going to go back in. I mean, it was certainly enough information for anybody to know he must be a resident, or because the defendant asked that question, he didn't know. When the defendant kept asking the question, are you a resident? That's true. It's clear by the testimony that Cooper did not know he was a resident, or the assailant knew, did not know he was a resident. But if you look at the factors that the State points at, supposedly to prove he knew he was a resident, it assumes that Cooper knew where he was, that he was at James Terrace. There's a sign up front, but the statute doesn't say the defendant has to have actual knowledge. It does. It says knowledge, right? Knows the individual to me. Yeah, that's actual knowledge rather than known or should have known. My point is that it does not use the modifier actual, but that's the way it was interpreted in Smith, right? Yeah, and in all these other cases, and I'm just using the term actual to differentiate it from the known or should have known standard. What about the State's argument that unless the defendant has actual knowledge or direct knowledge, it leaves a whole class of senior citizens unprotected by the statute? That's simply untrue. If the legislature wanted to protect everybody 60 years or older, they would have done so just like they did in the aggravated robbery statute that Cooper was acquitted of. That one only requires that the victim be over the age. So the legislature obviously contemplated the fact that this is, they wanted the person to actually know that this person was over 60, not make a best guess, which is what the State's arguing based on. What about predatory criminal sexual assault of a child? How much knowledge does the defendant have to have? Does he have to actually know the proof that the child is under age 13 or just looking at the child, is that sufficient? Say, for example, an 8-year-old, an 8-year-old little girl, the defendant rapes an 8-year-old little girl. I'm drawing a blank a little bit. But I believe that is a strict liability offense or is it known or reasonably should be known? It can't be strict liability. It has to be knowledge. Well, then, if that's the case, is it that the State would need some other proof of the child's, that the defendant knew the child's age besides her appearance of being very young? I believe that appearance could be enough, but only in the absolute extremes. If it's a very small child, 8 years old, that might be on the borderline of 12 or over. If it's a 61-year-old, that's real close to 60, but if it's an image of a 90-year-old. Mr. Minnelli had white hair, white whiskers, was wearing slippers without any socks on, and he told the defendant, if you don't leave, I'm going to go back inside. So the defendant must have known by then that he was a resident. Your characterization of his clothing is the State's interpretation of it. If you look at People's Exhibit 1, he's just wearing a plain shirt. I was talking about his slippers without socks. There appear to be shoes without socks. People do that. He could be a custodian. There's nothing that absolutely tells him that he's a resident, but let's assume that it does. Is a resident of this place 100% of the time going to be 60 years or older? The only person that we know in this case that lived in that facility moved in there with mobility issues prior to the age of 60. So how can the State now rely upon that as evidence that shows that he's over 60 when those things were present prior to that time? My question about that entrance and what he's seeing, it's assisted living or it's got a name, why is he banging on the door trying to get in when Mr. Minnelli could just get in? Mr. Minnelli had a key card, was able to get in, was able to walk in, showing that he's a resident? His testimony was that it was the automatic sliding door. His testimony was that at that time they unlocked those doors but leave them on manually. Until a certain time. That's why he was out smoking at that hour, because he knew pretty soon they were going to lock him up. So he's knocking on this door that's closed, that's not opening. You have to put your fingers between it and pull it open to open it. That's what Minnelli's testimony was. And so he was able to do that because he knew that that had to be done and that's another indication that he lived there. But the fact that he lived there, is that indicative of certainly of somebody over 60? Or is it potentially or very likely someone that's over 60? Well, there's enough information for the jury to conclude that the defendant knew. No, people versus Smith made it very clear that these types of inference stacking can't be relied upon. We're not bound by Smith, you know that Fourth District, correct? You're not bound by it, but unless you have a very good reason to rule against it, then you're creating a conflict in the appellate courts that would have to be addressed by the Supreme Court. So you're not technically bound by it, but it certainly carries some precedent. It's not an out-of-state case. It's your colleagues in the Fourth. In this case, you certainly are bound by people versus Giussone, where in that case, look at all the multitude of evidence that showed that this person knew, and there was still legitimate arguments that the State didn't show that he was 60 or over. Well, how about the exchange with the detective when the defendant says that he does not rob old folks? That's a characterization by Detective Moore. We don't know anything that happened in that conversation. You're asking us to re-weigh the evidence. We take the evidence in the light most favorable to the State, and that is that the jury believes that the defendant made that statement, Detective Moore's. Do we know that he didn't say where this attack occurred prior to him saying that? Pardon me? Do we know that Detective Moore did not indicate to him prior to that statement that he didn't say that this was at a nursing home or at Jennings Terrace or at this sheltered care facility? We don't know what Detective Moore told him leading up to that point. You mean that's not in the record? Correct. It's not in the record. Well, I thought the detective specifically denied telling him that beforehand. And so the defendant gave five different versions of the facts, but in each of them he admits to striking the victim. So here's the real, I mean, the question to me is on the knowledge issue. Now, the jury was instructed that they had to find that at the time he knew that Manila was 60 and over. So we have a nursing home or sheltered care. So I think it's called assisted living and sheltered care. Correct. It's the signage. You have a white-haired individual immediately outside who appears old, quote, unquote. And it's an old folks home. Manila says that three times, right? And there are nurses inside. So why is that not enough for the jury to infer that the defendant knew Mr. Manila was 60? First of all, again, pointing back to Smith, much of that requires a long series of inferences. Did Smith involve a statement by the defendant similar to this, I don't rob old folks? Is an old folk, quote, unquote, a person who is very definitely 60 years old? It's up to the jury to determine whether or not that's enough evidence to charge the defendant with having knowledge, that we don't re-weigh the evidence. Correct. But that's simply not enough. My question was, was there an admission like this in Smith? No, but in that case, the people, the individuals knew each other for 13 years. They lived together. They had a long relationship. There was a medical relationship there where the person was a caregiver. All of these are stronger inferences that somebody would know the person's age if they have access to their medical records. They have access to their bank statements. They live together. They sign rental agreements together. Those inferences just aren't enough to prove actual knowledge. They might be enough to prove should have known, but the legislature clearly laid it out where they have to know that the person's 60 or over. And looking at Manila himself is his appearance in the dark in a scuffle that took two to three minutes where Manila's own testimony during most of the time, he's facing the door, and once Manila's struck, he falls down face first. He got a limited view of this person, and he's supposed to divine the knowledge that he's 60 or over? It's just not enough here, especially considering, and this is kind of a, the state wants us, you all, to accept that Cooper fit this description given by Manila. The description was ages 22 to 34. That's a difference of 12 to 24 years. They're arguing that that's an acceptable description of the person, so their own case presupposes that a 12 to 24-year difference in age fits a description. So how are we supposed to take a person that's four years older than 60, or four days older than 67, so seven years, look at this person and say, yeah, he's definitely over 60? It's just not something that can provide actual knowledge. And in short, the state has failed to present any reliable evidence that Cooper knew that Manila was over 60. Therefore, Cooper requests this Court reduce his conviction to simple battery, as it did in People v. Chesone. With respect to one of the other issues, is there authority for what you argue the defendant should have been allowed to do, which is to stand up after the evidence is closed and remove the mask? No. Admittedly, the first aspect of that argument is novel, but it comes up in a pretty unique period of time. So I can't think of any instances where a defendant's face would be covered unless they brought upon it by themselves, unless they lost that right to be present in the courtroom wearing one of those. What about maybe putting on an article of clothing after the evidence is closed to see if it fits, like the O.J. Simpson case, except that it was done during the trial in O.J. Simpson? My argument specifically is only talking about the defendant's face. That should not be considered evidence. 999 cases out of 1,000 the jury can look over. They look at the witness, look at the defendant, just constant. It's not evidence. So having him stand up and remove his mask shouldn't have been an evidentiary display. But even if it was, if this Court thinks it was, his attorney is ineffective for failing to secure that. He could have either done it during his case or he could have requested the judge reopen the evidence in order to make that display. Well, that might be a stronger issue that ultimately will come up at a later time. But what was the purpose of standing up and taking off his mask? Manila was clear that he saw the person's eyes, nose, and lips. Nose and lips are covered by a mask. It's age-old method of concealing yourself. Put a bandana around your face. Then why didn't, why couldn't his attorney have, during Manila's testimony, asked the Court's permission for his client to stand and take off his mask then? That's what I'm arguing where the ineffectiveness occurred is it should have either happened. If this is evidence, truly, the defendant's only his face as he sits in the defendant's chair, that's an evidentiary display. His attorney should have made the efforts to put that into evidence. Well, based upon what you've just answered to me, it sounds like it was evidence because Manila said he saw his eyes, his nose, and his lips. So that would be evidentiary, and it's coming up after all of the evidence is closed. The State doesn't have an opportunity to respond. And, in fact, the Court's going to instruct them that the closing argument, and I would assume demonstrations therein, are not evidence. So I guess I don't understand. I understand what you're saying. Everything about this, assuming what case law has described as evidence, points to it as evidence, except the fact that it's just the defendant's face as he's in the courtroom. Every other case, the jury can look at him, and there's plenty of case law that talks about how it's important for the jury to observe the defendant and assess his credibility as well as the witness's credibility. So this is a ‑‑ He was never a witness, was he? No. He did not testify. Correct. All right. If he had testified, he would have taken off his mask so he could be understood. Correct. But you don't want to leverage him giving up his right to remain silent for being able to reveal his face. And also, if this is truly an evidentiary display, a characteristic like this wouldn't open him up to cross-examination like a testimony would. So his attorney should have known that, and he could have had him stand up. Just like if he's showing a tattoo. It's the same. It would have to be the same procedure. Wouldn't that be more suited for post-conviction? Because we don't know why the defense counsel didn't have the defendant remove his mask during the trial itself, during the presentation of evidence. There may have been conversations. The defendant may have changed his appearance. We don't know, right? There's things we don't know, but we do know what a reasonable trial strategy is. There's no reasonable trial strategy that is not using evidentiary rules in order to make this case. If he knew he was going to try to make this display, he has to take the steps to do it. Or if he's surprised and the judge says, you know, this is evidence, he should have requested to reopen the case. If he did that, he's got a preserved issue. He didn't do it, and it's ineffective. Counsel, two questions on that. One is, was everybody else who was not actively speaking, were they all wearing masks in the courtroom? As far as what the judge instructed, everybody was wearing a mask unless they were speaking, attorneys and witnesses, and the judge himself allowed himself to not wear a mask for the entirety of the case. All right, but the defendant was not the only individual wearing a mask at any time, right? Everybody else was wearing a mask. He was the only one on trial, though, and that's what's important here. And there's also an aspect of his own humanity. Why shouldn't he be able to show the jury his face? He's a person. He's on trial. He has rights, human rights, trial rights. He has all these rights. Why can't he present his face to the jury in an attempt to show there's nothing about my face that matches this guy's description of the assailant, except that I'm of average height and I'm black? So to that point, did the victim ever positively identify the defendant? No, he never did. He testified that he would recognize him if he saw him again. He never had his mask off during the case. He never identified him. He excluded him four or five times during the lineup. Right. Couldn't it be a trial strategy of the defense attorney to not remove the mask and not risk the identification in court that Mr. Manello might have made had he seen him? I don't know that that would be a reasonable trial strategy because there's already images of him in the record. They're pictures of a video, so they're two-dimensional. But a three-dimensional display of his face wouldn't do anything to change it. Well, nonetheless, sitting 20 feet from him in the same room, it runs the risk that the victim on the stand might say, now I see, he's the guy. I mean, that could have happened. It could have happened. It didn't happen. The state never asked him to identify him. So, you know, he never identified him, and he was never allowed to lower his mask, obviously. The argument here is that his face, the defendant's face in trial, is not any kind of evidentiary display. How could it be when every other case except this one that I know of, his face is uncovered? He doesn't have to enter that in evidence before every trial. So the main argument is that this isn't evidence. If it is evidence, then you go through an effective assistance, and you've got to deal with trial strategy and such. Mr. Moore, I'm going to consult my colleagues to see if they have any additional questions. Justice Burkett? Yes. Justice Kennedy? All right. You'll have an opportunity to respond after Mr. Barrett has concluded, if you choose to. Okay. Thank you. Mr. Barrett. Good morning, Your Honors. Counsel. May it please the Court, John Barrett for the people of the State of Illinois. You've got to stay close to the microphone. Can you hear me okay? I can now. Sorry, I have a little fog in my throat. It's allergies and all sorts of things. Yeah. Yes. Turning to the defense's first argument. When we're examining circumstantial evidence, the defense was correct that knowledge is largely proved through circumstantial evidence. We don't run into situations where a defendant said, oh, yes, I knew. They don't come out and admit, yes, I knew this person was such and such an age, whatever the statute might require. How do you distinguish Smith? Smith is distinguishable because, in that case, the appellate court reweighed the evidence. The standard wasn't overruled. We still have the law still standing for the proposition that circumstantial evidence is sufficient. The Smith court was saying that it wasn't a reasonable inference that this person was over 60 years old. There wasn't enough evidence to corroborate that. In this case, we have the victim having testified to telling the defendant when he was outside, just before being attacked, that, hey, this is an old folks' home. If I go in and I tell the CNAs in there what's going on, you could be arrested for trespassing. Then he reiterates that. This is an old folks' home. But he didn't say, I'm an old folk. He didn't say, I'm over 60. Old is problematic, too. By definition, old is anyone older than me. Exactly. That's the problem I've got here is the vagueness in terms of old folks' home, older folks, sheltered living, assisted living. None of these by themselves indicate a minimum age of 60. The victim himself had been a resident prior to age 60. So how do we get past that set of facts? Well, first of all, the distinction between this is the assisted living portion and this is the nursing home portion of the facility, there's no evidence the defendant would have been aware of such a distinction. Right. It's not a big difference. It wouldn't have made any difference anyway because they're not age dependent. They're not age dependent. Right. So old folks' home is basically the evidence you've got plus silver hair. But he's probably a resident based on his... He might not have been to the extent that the defendant asked him at least three times, are you a resident? Right. So he's not certain that he's a resident. So other than old folks' home and silver hair, what else do we have? We also have Detective Moore's testimony that when he was interrogating defendant at the Canyon County Jail on another charge about the present crime, that the defendant had, in denying that he had committed it, said, I don't rob old people. Right. But again, we're left with old. Right. So, you know, there is a very subjective definition where the statute says 60, but we have precedent that says there has to be something more than the inference on top of the inference. And here we do have that, though. We have a victim who's approaching 70. He's very evidently over 60. When you look at his appearance, and then we have also that the victim testified in court. So the victim took the witness stand, and the jury was able to observe the victim directly during the testimony. And then we also had pictures, plaintiffs' exhibits one through six, that showed the defendant at the time that night he was beaten. So the jury looked at that, they considered it, and they said, yes, this is consistent with what the requirements of the statute are. Isn't all knowledge and awareness or familiarity based upon experience that a person has or information that's provided? In this case, you've got both experience and information that's provided by Mr. Manella to the defendant, and by the defendant to Detective Moore when he said, I don't rob old folks. Certainly more than enough information that would have ticked him off that this is definitely someone else. Yes. Yes. The jury concluded the defendant didn't know. Based on the elements in the law and the evidence that was presented, they concluded that he knew, the defendant knew in this case. So the victim at the time here was 66, and Smith, the victim, was 63. But in Smith, there was a relationship for quite some period of time. Here you have a situation where the interaction lasted maybe a couple of minutes, so short and in such limited circumstances that the victim can't even ID the defendant positively. So how are you to infer that the defendant ought to know that the victim is 60 in this limited set of circumstances? In this case, we also have evidence that wasn't presented in Smith. In this case, we have the defendant was acknowledging that this is an old person. He was quoted as saying, this is an old person. We also have the victim testifying, hey, this is an old folks' home. I'm going to go inside and tell the CNAs that you're out here or you could be arrested. So you have more of an emphasis and a stress on the person being older, and based on that distinction, I think that sets this case apart. But in addition to, I think the re-weighing that we see the Smith court doing is something the state disagrees with, that the standard review wasn't being upheld. The appellate court decided to re-weigh the evidence instead of looking at that evidence in the light most favorable to the state. Well, I'm sure Justice Holder-White would disagree with that characterization too, but the court's emphasis is really on the change in the statute, right? In 2006, the legislature specifically made it harder, whereas previously they had refused to do so on the justification that Syantar is too hard to prove. And then they go and change it to make it so that Syantar is required specifically as to the age limit. And then we have two cases here where it appears that the courts before us have set a minimum threshold for the amount of evidence as to that knowledge. So are you asking us to essentially overturn or disagree with, I mean we can't overturn it, but are we going to say Smith is wrongly decided? That was decided on its own set of facts, which were much stronger than these facts. Well, that's one interpretation. You could look at the facts here as much stronger. You have a person who's approaching 70 who's much older at a nursing home. But no relationship, right? A momentary interaction. And old, again, you know, I'm not 60, but I'm old. These are facts that have been weighed. And actually, in Smith, the jury decided that, yes, this was enough, and they convicted. It was the appellate court that said it wasn't enough. They took that away from the jury. And likewise here, the jury has said it's enough, and it should be. And we also have a nursing home situation. In Smith, there was no nursing home. This took place outside of an old folks' home. So there was just more of a stress on the elderly here. Right, so the terminology of nursing home, I looked at that a few times here, that's never actually displayed anywhere. It says assisted living and sheltered care. Right. And even nursing home doesn't, by any definition, say 60. Sure. I mean, how much are we to infer that nursing home or assisted living means 60? You know, given the amendments to the statute, it almost seems as if the legislature wanted this type of crime to be limited to people with specific direct knowledge of age, such as caregivers and family members. But we're talking about aggravated battery. So people who are targeting a vulnerable population that says, hey, you know what, late at night I'm going to roll up here and I'm going to take somebody's wallet because they're weak and old and they can't do anything about it. This case is a poster child for just that purpose of the legislation. Well, that's a policy argument. That is a policy argument. Here we're looking at whether or not the evidence matches. We're looking at the fact that the evidence matches what the purpose of the statute is. Those inferences are case-specific. And in this circumstance, the facts were specific enough, and the jury waited, looked at it, and decided that, yes, this was sufficient. So we can talk about generally, I mean, we can talk about someone who's younger than 60, but in this specific case, with this specific victim, on these facts, it was enough. Both Mr. Minilla and the defendant both used the term old folks. Yes. Now, the jury asked a question at some point in the afternoon, what is sheltered care living and why would Mr. Minilla have his wallet? So that seems to me that the jury did not equate sheltered care living with minimum age requirement, and the fact that he had his wallet might indicate that perhaps the victim was not actually a resident. So, I mean, the jury is given the fact in the testimony that the victim is 68 now, by inference 66 at the time, but the jury seems not to have equated the nursing home setting, as you've said, with necessarily being age 60 or over. Correct. But in this case, we're looking at the victim, we're looking at how old he is, we're looking at proximity to where he was at the time, based on his physical characteristics, and his having characterized it to the defendant as an old folks home. This is enough. He's almost 70. 67 when he testified, he was 66 when he was attacked. So we have to look at what the jury was weighing and say, were they reasonable? Yes. Were there photographs of the victim in Smith introduced? I don't believe so. I don't believe so. And here there were photographs of the victim that night. Correct. And also, we do have direct evidence that the defendant had the wallet and discarded it, So he had access to his ID, which would have disclosed his date of birth. Although the jury acquitted him of robbery. We can't speculate as to why they acquitted him for that. Well, clearly they didn't find him not guilty because of his age on the aggravated robbery. So what other inference could there be than that the jury simply decided that he didn't take the wallet? Well, we have appellate courts that have characterized it as where there's other charges that are acquitted, it's equally likely that the jury was just being lenient or might have had its own. We can't presuppose that the evidence wasn't sufficient. A jury may acquit on other charges for leniency or any other reason. There's only one possibility here because if the jury convicted the defendant of aggravated battery, he is the person that conducted both the punch and whatever other blows were struck and took the wallet. It couldn't. There weren't two people. There was only one. Right. So they exercised the power of leniency. Right? Correct. Well, we don't have to infer that. We can infer that they made a factual determination, too, that he didn't steal the wallet. So my point only is that I don't know that you can rely on the identification in the wallet. Even if you did, it's after the fact that he would be discovering that. So, I mean, again, we're back to old as being the only evidence you have and white hair. And the proximity to the nursing home and the characterization of the nursing home as an old folks' home and, like you said, his physical appearance. That was enough. The jury saw that evidence and they decided it was enough. Was that reasonable? Yes. All right. So, I mean, that's our determination then. So is that enough? Is there a threshold by which? I mean, what is the minimum? I mean, this seems like that would have to be the barest of bare minimums. We've got a minute-long interaction, old folks, silver hair. So I promised my clerk that I would bring up Wilford Brimley. Are you familiar with the actor? Yes. He played a 70-plus-year-old character in the movie Cocoon. And it was a revelation to the world to discover that during filming he was 49. So how much do we rely on appearance? Well, I remember we had special effects in Hollywood that may have also contributed to that. This was before all that. There are always outliers. There are always those zebras out there that... May I finish my thought? Please. Is that okay? We're always going to have an outlying situation where somebody who is in their 40s or 50s might look like they're 90. They may have a terminal illness that puts them in a much older appearance. So what we have to do is just look at these facts, look at these facts specifically, and allow the jury to have made reasonable inferences if they have. The state is asking this court to uphold their decision. I want to address the mask issue. Why is it that a defendant should be forced to wear a mask throughout a proceeding, regardless of whether it's during the evidence or during closings? During the trial, it would have been possible to put a defendant on the stand and have him remove the mask as a witness. At that time, there were protocols with COVID-19, in effect, that restricted anyone other than a witness or the judge or the trial attorneys from removing their mask. Now, we have to ask, if that wasn't done, was that ineffective assistance of counsel? Or we didn't have an identification in this case. We didn't have a victim who was able to concretely describe the facial features. Although he acknowledged, I saw the eyes, I saw the nose, I saw the mouth, he didn't give a description of any of those. He certainly didn't give a detailed description of the face. He gave a general description of his body type. And let's remember, too, that the defendant was wearing a hoodie and a hat. When you have a baseball cap on and a hoodie, I'm sorry, you look like you're a teenager. So the fact that he's thinking he's too old in these lineup photos, well, he's not wearing a hat and a hoodie anymore, so he doesn't look like he's a young kid at night. So, I mean, and the photos themselves were not great. And then also we have a victim whose eyesight was poor. He wasn't using his prescription glasses during that lineup. So he's admitted, I'm struggling to see. I don't want to misidentify. Everything is skewing toward, I don't think so, is it, I don't think so, let me see it again. I mean, he's really trying to be cautious because his eyesight is so poor. So here we have to look at the timeline. We have to look at the other circumstantial evidence that put the defendant there, not a facial description. There can't be prejudice with respect to that. That's the same. Justice Burkett? I don't have any either. So you can sum up if you want to, Mr. Barrett. So in summation, the people request that this honorable court uphold defendant's conviction and sentence. Thank you. All right, Mr. Moore, if you wish to reply, you may do so now. Just briefly, Your Honors. With regards to whether or not there was an exclusion during the video recorded portion of the lineup procedures, I'm just going to read you the transcript. The last question that the administrator asks Manila, after he had excluded him three previous times, Is it number five? Manila shakes his head. Too heavy. Too old, I believe. Okay, too heavy, too old. This is the administrator. Okay, too heavy, too old. Positive for number five? Yes. How is that not a clear exclusion from a lineup procedure? And the state wants to, regarding the mask, lowering the mask, the state argues that it's not probative because there was no identification. From the defendant's perspective, it's more, it's just as if not more probative to show his face when there's not an identification because it further contrasts his face to what was described. But if they really wanted to identify him and give, or Mr. Manila said, I'm pretty sure I could identify him if I saw him again. That was his testimony. If he wanted to show him that this wasn't his client, why didn't he ask while Mr. Manila was testifying? Why does he want to show at the end of the case? It's clearly an evidentiary issue that he is trying to establish or show that there's not proof to establish. So how can he put that on after all the evidence is closed? If, like I said prior, if we're taking this as evidence, all of the things that you described, that situation shows that it was an effective assistance because he knew when Manila was testifying, my client doesn't look like that. Correct. So he could have said stand-ups. And he excluded him a bunch of times. And the state did not ask him to identify the assailant in court, so they didn't have confidence that he would identify him. So it's just he was excluded, but just the fact that there was an identification shouldn't take too much weight. But getting to, just as Kennedy said it really well, what is old? There are signs in grocery stores. We card people, anyone that doesn't look to be 40 years old. Why is it between 21 and 40? Because it's not reliable to look at somebody and guess their age. You get an ARC card at 50, right? I'm 55. I don't know. I'm not there yet. Well, I am, and I'm good to see you at 50 or 55. Well, if it's complementary, I wouldn't look at you and know that you were over that age. Thank you. I don't even want to ask. The perception of age is totally transitory based on whether or not the person takes care of themselves. If they're drug addicts who live on the streets, they age super fast. If they're an actress in Hollywood, they age quite a bit slower. But just ask. Mr. Moore, the fact remains that the jury heard all of this evidence and made a decision that it was sufficient to meet the standards set in the instructions for the offense of aggravated battery of a person that the defendant knew was over 60 years old. How can we change that? How can we re-weigh that evidence? Just as it did in Smith and just as this court does. We're not asking you to re-weigh it. We're asking you to look at the evidence and ask whether or not any reasonable jury could have concluded this. There is a balancing act between re-weighing and that standard, but that standard exists and it's applied, and we're asking to apply it in this case. And just ask yourself, what story did Cooper tell Detective Moore? What's the only story that fits the evidence in this case? Well, he told a couple of stories, as I recall. Maybe three or four, actually. There were several, but all of those crazy stories came after the series of lies that Detective Moore told him. Like, I have proof that you were there. I have you on surveillance camera. He didn't react how Detective Moore expects someone in that position to react, but he reacted how a lot of people react in that situation where they try to figure out what happened in the moment. He was clearly intoxicated in that video, so he's trying to remember that night he was intoxicated. But I'll finish up really quick unless there's no other questions. And again, we just ask this Court to lower the conviction to battery for Issue 1 or remand for a new trial for Issues 2 and 3. Thank you. Thank you. All right, counsel, thank you very much for your argument this morning. I will say that all of the discussion of age was making me uncomfortable, but that's another story. And they will make a decision in this case in due course.